IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:17-cv-1137

JOE L. MOLINA,

    Plaintiff,

v.

JOHN MCNERNEY, in his individual capacity,

    Defendant.

## COMPLAINT & JURY DEMAND

Plaintiff Joe L. Molina, by and through his attorneys, Julian G.G. Wolfson of the LAW OFFICE OF JULIAN G.G. WOLFSON, LLC, and E. Milo Schwab of SCHWAB LEGAL, LLC, respectfully alleges for his Complaint and Jury Demand as follows:

### I. INTRODUCTION

1. On the night of May 15, 2015, Plaintiff Joe L. Molina was sitting outside of his gallery when he observed a woman and child being detained by officers of the Greeley Police Department.

2. Recognizing that the woman and child were distress, and as a concerned citizen, Mr. Molina approached the situation from a distance and inquired about what was occurring.

3. Defendant McNerney, one of the officers on the scene, then told Mr. Molina that this was none of his business, and that he should leave.

4. In response, Mr. Molina informed Defendant McNerney that as a concerned member of the community, he did in fact have an interest in what was occurring and whether

the woman and child were being treated properly by the police.

5. Mr. Molina then briefly asked the woman whether she and the child were okay and whether they needed any assistance.

6. Despite the fact that Mr. Molina was on a public sidewalk where he was lawfully permitted to be, and was not obstructing the police, Defendant McNerney requested that he leave the scene.

7. In order to abide by Defendant McNerney's request, Mr. Molina began walking away.

8. In retaliation for opposing and/or challenging his actions as a police officer, Defendant McNerney approached Mr. Molina from behind and forcefully lifted him up by his left arm, which in turn caused his shoulder to audibly pop.

9. Defendant McNerney then proceeded to unjustifiably arrest Mr. Molina and invasively search his person and belongings before transporting him to the Weld County Jail where he was detained for over four hours.

10. While all charges against Mr. Molina were subsequently dismissed, this incident has had a profound and lasting effect on him.

11. In light of the physical and emotional injuries Mr. Molina sustained, and Defendant McNerney's patently unconstitutional conduct, Mr. Molina now seeks relief under 42 U.S.C. § 1983.

## II. JURISDICTION AND VENUE

12. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

13. This action is authorized and instituted pursuant to 42 U.S.C. § 1983.

14. Jurisdiction supporting Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. § 1988.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims asserted in this Complaint occurred within the State of Colorado.

### III. PARTIES

16. At all times relevant to the subject matter of this litigation, Plaintiff Joe L. Molina has been a United States Citizen and has been domiciled in the State of Colorado.

17. At all times relevant to the subject matter of this litigation, Defendant John McNerney has been a citizen of the United States and domiciled in the State of Colorado, and was acting under color of state law in his capacity as a police officer employed by the Greeley Police Department.

### IV. FACTUAL BACKGROUND

18. On the evening of May 15, 2015, Joe L. Molina exited the Moxi Theater, located at 802 9th Street, Greeley, Colorado 80631, where he had been attending a birthday party.

19. Upon leaving the Moxi Theater, Mr. Molina returned to his gallery, the Joe Molina Gallery and Studio, located just across the street at 930 8th Ave, Greeley, Colorado 80631.

20. When Mr. Molina got back to his gallery, he noticed that he did not have his keys.

21. As a result, Mr. Molina called his assistant at 9:46 p.m. to ask her to bring him the keys.

22. Mr. Molina then sat on a bench near the front door of the gallery while he waited for his assistant to arrive.

23. Seconds later, Mr. Molina observed officers employed by the Greeley Police Department pull over a gray mini-van at the northwest corner of 8th Avenue and 10th Street.

24. While the police were dealing with the van that they had pulled over, Mr. Molina's assistant arrived and unlocked the gallery.

25. Approximately five minutes later, Mr. Molina returned outside and saw that the police and the van were still there.

26. Mr. Molina then observed one officer talking to the driver of the van while another officer approached the van with a flashlight, illuminating the inside.

27. Soon thereafter, four additional police cars arrived, one of which contained a search dog.

28. Defendant McNerney then ordered the driver out of the van and escorted him to the rear side of his vehicle, where he began to interrogate and search the individual.

29. Defendant McNerney proceeded to arrest the individual, put him in handcuffs, and place him in the back of one of the police cars.

30. Two of the officers on the scene then proceeded to walk around the van with the police dog and continued to search inside the van with their flashlights.

31. At this time, one of the officers opened the passenger side door of the van, forcing a woman to exit the vehicle.

32. The woman then opened the back door of the van to tend to a child, who was

approximately two years old.

33. As two of the officers escorted the woman and child away from the van, Mr. Molina noticed that the child was whimpering and clinging onto the woman tightly, while the woman appeared terrified.

34. Defendant McNerney then took the woman and the child onto the sidewalk, where he and another officer began to question the woman as she continued to clutch the child.

35. While Mr. Molina could not hear exactly what was being said, it was apparent that the woman and child were distraught.

36. Concerned about the woman and the child, Mr. Molina walked closer to where the officers were located to get a better idea of what was occurring.

37. At no time were there any signs, police tape, barricades, or any other indication that that the public was restricted from entering this area.

38. As he slowly and cautiously approached the officers, who at the time were still questioning the women and child, Mr. Molina introduced himself as Joe Molina and inquired about the ongoing situation.

39. Defendant McNerney then instructed Mr. Molina to keep walking and informed him that this was none of his business.

40. In response, Mr. Molina, acting as a concerned citizen, politely replied he did in fact have an interest in what was going on and how these people were being treated in light of the fact that he is an active member in the community.

41. In an effort to make sure that the woman and child were not being unlawfully treated by the police, and to see whether they needed any assistance, Mr. Molina asked the

woman if she was okay.

42. At no time did Mr. Molina's statements interfere with the officers' actions, and Mr. Molina was on a public sidewalk where he was lawfully permitted to be for the entire duration of the encounter.

43. While Mr. Molina was speaking with the woman, Defendant McNerney interrupted him and informed Mr. Molina that he needed to leave.

44. Complying with Defendant McNerney's request, Mr. Molina immediately began to walk away from the scene of the incident, leaving his back turned to the officers.

45. At this point, Mr. Molina posed no threat of danger to any officer or third party, was in no way interfering with or obstructing the police from conducting their business, and was responsive to Defendant McNerney's request that he leave the scene.

46. Moreover, based on the facts and circumstances presented at the time, the officers on the scene had no reasonable suspicion, probable cause, or arguable probable cause to believe that Mr. Molina had committed, was committing, or was going to commit any crime.

47. Nevertheless, while Mr. Molina was quietly walking away from the scene, and with no indication that he intended to return to the scene, Defendant McNerney approached Mr. Molina from behind.

48. In an effort to seize Mr. Molina, inflict pain upon him, and in retaliation for challenging and/or opposing his actions as a police officer, Defendant McNerney forcefully lifted Mr. Molina up by his left arm, causing his shoulder to audibly pop.

49. Notwithstanding the fact that Defendant McNerney could recognize that Mr. Molina

was in severe pain and was not resisting arrest, Defendant McNerney continued to lift Mr. Molina by his left arm up for at least another minute.

50. Upon information and belief, Defendant McNerney continued to lift Mr. Molina up for the sole purpose of causing him harm.

51. Defendant McNerney then placed Mr. Molina in handcuffs, and rushed him back to the police car.

52. The handcuffs, which Defendant McNerney had intentionally placed too tightly on Mr. Molina, quickly began to cause Mr. Molina severe pain.

53. Though no lawful arrest had occurred and despite not having any legal justification, Defendant McNerney proceeded to scrupulously search Mr. Molina's person, removing all of his belongings from his pockets and examining their contents in great detail.

54. After Defendant McNerney placed Mr. Molina in the back of a police car, he proceeded to pull out his flashlight and began examining the surrounding buildings.

55. Upon information and belief, Defendant McNerney was checking to see if there were cameras, which may have been capturing his unlawful and unconstitutional conduct.

56. At this time, Defendant McNerney pulled Mr. Molina out of the car and subjected him to a second full body search, despite having no legal justification for doing so, including but not limited to a lawful arrest.

57. Defendant McNerney patted down both of Mr. Molina's legs, his crotch, armpits, jacket pockets, and examined the inside of his waistband. Defendant McNerney then demanded Mr. Molina to open his mouth, into which he shined a flashlight.

58. After finding no evidence of a crime or any contraband, Mr. Molina was placed back into the police car.

59. Defendant McNerney then transported Mr. Molina to the Weld County Jail, where he was booked and processed for Obstructing a Peace Officer and Failure to Obey a Lawful Order.

60. Throughout the booking process, Defendant McNerney was speaking with two other officers about what had just transpired, openly laughing about the situation in front of Mr. Molina and the other detainees present.

61. After spending approximately four hours in jail, Mr. Molina was released at approximately 2:30 a.m., after his wife posted bail on his behalf.

62. Since being released from the Weld County Jail, all charges against Mr. Molina have been dismissed.

63. As a result of this incident, Mr. Molina has suffered significant physical and emotional damages, for which he now seeks redress.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM
*42 U.S.C. § 1983—Fourth Amendment (Excessive Force)*
*Plaintiff Joe L. Molina Against Defendant McNerney*

64. Plaintiff Joe L. Molina incorporates by reference all of the preceding paragraphs as if fully set forth herein.

65. At all relevant times hereto, Defendant McNerney was acting under the color of state law in his capacity as a police officer employed by the Greeley Police Department.

66. The Fourth Amendment to the United States Constitution prohibits police officers

from using excessive force against other persons.

67. The force used by a police officer will be excessive unless the force that was used was objectively reasonable in light of the facts and circumstances presented at the time.

68. Defendant McNerney's decision to lift Plaintiff by his left arm and forcefully thrust it upwards, causing his shoulder to audibly pop, was not objectively reasonable in light of the facts and circumstances presented at the time.

69. The right of Plaintiff to be free from the application of excessive force under the Fourth Amendment to the United States Constitution was clearly established at the time of the alleged incident.

70. Any reasonable law enforcement officer knew or should have known of this clearly established right.

71. Defendant McNerney's actions were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Plaintiff's constitutional rights.

72. The acts and/or omissions of Defendant McNerney were the moving force and proximate cause of Plaintiff's injuries.

### SECOND CLAIM
*42 U.S.C. § 1983—Fourth Amendment (Unlawful Arrest)*
*Plaintiff Joe L. Molina Against Defendant McNerney*

73. Plaintiff Joe L. Molina incorporates by reference all of the preceding paragraphs as if fully set forth herein.

74. At all relevant times hereto, Defendant McNerney was acting under the color of state law in his capacity as a police officer employed by the Greeley Police Department.

75. The Fourth Amendment provides individuals with the right to be secure in their persons against unreasonable seizures.

76. The right of Plaintiff to be free from unreasonable seizures was clearly established at the time of the alleged incident.

77. Any reasonable law enforcement officer knew or should have known of this clearly established right.

78. Defendant McNerney unlawfully seized Plaintiff when he arrested him.

79. At no time did Defendant McNerney have reasonable suspicion, probable cause, arguable probable cause, or any other legal basis to believe that Plaintiff had committed, was committing, or was going to commit any crime, prior to seizing and continuing to restrain him.

80. Defendant McNerney had no warrant authorizing any such seizure of Plaintiff.

81. No legally recognizable exigent circumstances existed that would have justified or permitted Defendant McNerney's conduct.

82. Defendant McNerney's actions in arresting and otherwise seizing Plaintiff were objectively unreasonable in light of the circumstances confronting him.

83. Defendant McNerney intentionally, willfully, and wantonly seized Plaintiff without legal justification.

84. As a direct and proximate result of Defendant McNerney's actions, Plaintiff has suffered and physical and emotional injuries.

**THIRD CLAIM**
*42 U.S.C. § 1983—Fourth Amendment (Unlawful Search)*
*Plaintiff Joe L. Molina Against Defendant McNerney*

85. Plaintiff Joe L. Molina incorporates by reference all of the preceding paragraphs as if fully set forth herein.

86. At all relevant times hereto, Defendant McNerney was acting under the color of state law in his capacity as a police officer employed by the Greeley Police Department.

87. The Fourth Amendment provides individuals with a legitimate expectation of privacy in their bodies and property being free from unreasonable governmental searches.

88. The right of Plaintiff to be free from unreasonable searches was clearly established at the time of the alleged incident.

89. Any reasonable law enforcement officer knew or should have known of this clearly established right.

90. Defendant McNerney unlawfully searched Plaintiff, multiple times, without any reason to believe that he was armed or dangerous.

91. Defendant McNerney had no warrant authorizing any such search of Plaintiff or his property.

92. No probable cause, legally recognizable exigent circumstance, or other legal justification existed, which would have justified or permitted Defendant McNerney's conduct.

93. Defendant McNerney's decision to search Plaintiff, on multiple occasions, was objectively unreasonable in light of the circumstances confronting him and in light of the fact that he had no probable cause to arrest Plaintiff.

94. Defendant McNerney engaged in these actions intentionally, willfully, and wantonly.

95. As a direct and proximate result of Defendant McNerney's actions, Plaintiff has suffered and continues to physical and emotional injuries.

## FOURTH CLAIM
*42 U.S.C. § 1983—First Amendment Retaliation*
*Plaintiff Joe L. Molina Against Defendant McNerney*

96. Plaintiff Joe L. Molina incorporates by reference all of the preceding paragraphs as if fully set forth herein.

97. At all relevant times hereto, Defendant McNerney was acting under the color of state law in his capacity as a police officer employed by the Greeley Police Department.

98. Plaintiff's speech was conducted on public-sidewalk in Greeley, Colorado.

99. Inquiring into possible police misconduct and/or voicing opposition to police activity is protected by the freedom of speech clause of the First Amendment.

100. Plaintiff's speech did not violate any law.

101. Defendant McNerney knew or should have known that Plaintiff was not violating Greeley Municipal Ordinances 10.12.050 (Obstruction of a Police Officer) and 10.12.130 (Failure to Obey a Lawful Order).

102. But for Defendant McNerney's retaliatory animus regarding Plaintiff's speech, he would not have applied excessive force, searched, or arrested Mr. Molina.

103. Defendant McNerney's retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment-protected activity.

104. Defendant McNerney's conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendant's position knew or should have known.

105. Defendant McNerney engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

106. Defendant McNerney's acts and/or omissions caused, directly and proximately, Plaintiff to suffer physical and emotional injuries.

### FIFTH CLAIM
*42 U.S.C. § 1983—First Amendment Violation*
*Plaintiff Joe L. Molina Against Defendant McNerney*

107. Plaintiff Joe L. Molina incorporates by reference all of the preceding paragraphs as if fully set forth herein.

108. At all relevant times hereto, Defendant McNerney was acting under the color of state law in his capacity as a police officer employed by the Greeley Police Department.

109. Defendant McNerney's decision to arrest Plaintiff for violating Greeley Municipal Ordinances 10.12.050 (Obstruction of a Police Officer) and 10.12.130 (Failure to Obey a Lawful Order), violated Plaintiff's rights, under the First Amendment, to freedom of speech.

110. Defendant McNerney's decision to arrest Plaintiff would chill a person of ordinary firmness from exercising their First Amendment rights.

111. Inquiring into possible police misconduct and/or voicing opposition to police activity is protected by the freedom of speech clause of the First Amendment.

112. Plaintiff's speech occurred at a traditional public forum.

113. Defendant McNerney's decision to arrest Plaintiff, was based on the content of his speech.

114. Defendant McNerney's decision to arrest Plaintiff, was not narrowly tailored to

achieve any significant government interest.

115. Defendant McNerney's decision to arrest Plaintiff, did not leave open ample alternatives for Plaintiff's speech.

116. Defendant McNerney engaged in these unlawful actions willfully, knowingly, and with reckless or deliberate indifference to Plaintiff's First Amendment rights.

117. Defendant McNerney's acts and/or omissions caused, directly and proximately, Plaintiff to suffer physical and emotional injuries.

WHEREFORE, Plaintiff prays this Court:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Award Plaintiff compensatory damages against Defendant for his violation of Plaintiff's federally protected rights;

C. Award Plaintiff punitive damages against Defendant for his reckless and/or callous indifference to Plaintiff's federally protected rights;

D. Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

E. Allow such other and further relief as the Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 8th day of May, 2017.

LAW OFFICE OF JULIAN G.G. WOLFSON, LLC

*/s/ Julian G.G. Wolfson*
Julian G.G. Wolfson
PO Box 13013
Denver, CO 80201
(720) 507-5133
jwolfsonlaw@gmail.com

SCHWAB LEGAL, LLC

*/s/ E. Milo Schwab*
E. Milo Schwab
1444 Blake Street
Denver, CO 80202
(720) 507-8215
milo@schwablegal.com

ATTORNEYS FOR PLAINTIFF